AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Idaho

United States of America
v.
Robert Morse

*Defendant(s)*

Case No. 2:26-mj-38-REP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of February 12, 2026 in the county of Kootenai in the District of Idaho, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of Unregistered Firearm |

This criminal complaint is based on these facts:
See the attached affidavit of Special Agent Alexander Prostko

☑ Continued on the attached sheet.

[signature]

Alexander Prostko, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 13 February 2026

[signature]

City and state: Boise, ID

Raymond E. Patricco, Chief U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Alex Prostko, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been employed as such since August 2017. I am currently assigned to the Salt Lake City Division of the FBI and work out of the Coeur d'Alene, Idaho, Resident Agency ("RA"). In that capacity, my primary responsibility is to investigate violations of federal law, including firearms-related offenses. I am a certified member of the FBI Salt Lake City Division Special Weapons and Tactics ("SWAT") Team and a certified FBI Firearms Instructor. Prior to my assignment to the Coeur d'Alene RA, I was assigned to the FBI Salt Lake City Division, Shelby, Montana, RA, where I was responsible for investigating violent and drug crimes on and around the Blackfeet Indian Reservation.

2. The information contained in this affidavit comes from my personal observations, training and experience, investigation of this matter, and information obtained from other law enforcement officers and witnesses involved in this investigation. Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted.

3. As further detailed below, based on my investigation and the investigation of other law enforcement officers, I submit there is probable cause to believe that ROBERT MORSE ("MORSE") has violated 26 U.S.C. § 5861(d), Possession of Unregistered National Firearms Act Firearms.

## PROBABLE CAUSE

4. This investigation concerns alleged violations of Title 18 U.S.C. § 922(g)(1) related to an individual possessing a firearm and ammunition after having been convicted of a felony. 18 U.S.C. § 922(g)(1) states it shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

5. Morse is believed to be a prohibited person based on a prior conviction in Washington for Residential Burglary, in violation of RCW 9A.52.025(1), in 1994, when Morse was a juvenile. After that juvenile conviction, on or about December 16, 2002, an Information in case number 02-1-01149-1, was filed in the Superior Court of the State of Washington in and for the County of Benton, accusing Morse of the crime of Unlawful Possession of a Firearm in the Second Degree, in violation of RCW 9.41.040(1)(b)(i). The Information stated Morse "did knowingly own or have in his/her possession or control a firearm, to wit: .380 CAL, SEMI-AUTOMATIC JENNINGS PISTOL, after having previously been convicted of a felony in this state, to wit: Residential Burglary in 1994…" On or about April 18,

2003, a court document in case number 02-1-01149-1 labeled "Statement of Prosecuting Attorney on Amendment," contained the following language:

| STATE OF WASHINGTON<br>Plaintiff<br><br>vs.<br><br>**ROBERT RAYMOND MORSE**<br>**D.O.B.: 04/04/1979**<br>Defendant | NO. 02-1-01149-1<br><br>**STATEMENT OF PROSECUTING ATTORNEY ON AMENDMENT** |
|---|---|

The State of Washington is moving to amend the charge of UNLAWFUL POSSESSION OF A FIREARM IN THE SECOND DEGREE, RCW 9.41.040 to ATTEMPTED UNLAWFUL POSSESSION OF A FIREARM IN THE SECOND DEGREE, RCW 9.41.040 AND 9A.28.020 for the following reasons:

The defendant had a conviction as a juvenile in 1994 for Residential Burglary. However, this conviction does not appear of his NCIC Triple I criminal history. The defendant claims he asked various authorities (a licensed firearms dealer, the sheriff's office) if he could legally purchase a firearm. Since the conviction did not appear on his record, those authorities told the defendant he could purchase a gun. While this is not a defense, it should be considered in charging the defendant. Offc. Kane, who cited the defendant, supports the reduction. The reduction will hold him accountable.

In another court document in case number 02-1-01149-1, called "Statement of Defendant on Plea of Guilty to Non-Sex Offense" the following information was provided.

statement.

[ ] The judge has asked me to state what I did in my own words that makes me guilty of this crime. This is my statement: On 12/3/02 in Benton County I ~~possessed a pistol having previously been convicted of Residential Burglary in 1994.~~ attempted to possess a pistol having been convicted in 1994 of Residential Burglary when I was a juvenile

[ ] Instead of making a statement, I agree that the court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea.

12. My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and Attachment "A," if applicable. I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

Defendant

6. Based on the above, your Affiant submits there is probable cause to believe Morse is a prohibited possessor based on his 1994 juvenile conviction in Washington for residential burglary, and that he knows of his conviction that now prohibits him.

7. The investigation also concerns alleged possession of unregistered National Firearms Act items in violation of Title 26 U.S.C. § 5861(d). Title 26 U.S.C. § 5861(d) states it shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

8. On February 3, 2026, your Affiant spoke with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) SA Timothy Wihera who informed me Morse does not have any registered firearms in the National Firearms Registration and Transfer

Record (NFRTF). Based on the ATF website, the NFRTF is the central registry of all NFA firearms in the United States.

9. On or about April 18, 2025, the FBI National Threat Operations Center ("NTOC") received an online tip from an adult male ("AM1") regarding Morse posting threats of killing officers if they try to raid Morse for manufacturing firearms in Post Falls, Idaho. Shortly thereafter, the FBI Seattle Field Office was notified of the complaint.

10. The complaint investigation was assigned to an FBI SA in the Tri-Cities Resident Agency ("RA"). The FBI saw two videos posted on Facebook expressing frustration with the government, particularly the ATF. In the videos, an individual believed to be Morse can be heard saying something to the effect of, "If they came for me, it will be the last thing they ever do." The FBI Agent noted in none of the videos did Morse state an intention to proactively kill law enforcement. Morse also stated his actions (3D printing firearm receivers) were perfectly legal, also stating something to the effect of, "I'm in Idaho. I'm in the great state of Idaho." The assigned FBI Agent attempted to contact Morse via telephone but was unsuccessful. The FBI Agent then left a voicemail on what they believed to be Morse's telephone number, 509-308-1700. Later in the day, the FBI believed that the videos on Morse's Facebook regarding the frustration with the ATF were removed. Two new videos were posted by Morse stating he wanted to clarify his

earlier statements regarding the ATF. Morse said that if the ATF were to come to his house, he would comply with all orders. While Morse would not be able to fight them taking his guns, he stated something to the effect that the ATF would "make me a criminal." Morse then stated that he had no intention of killing law enforcement.

11. The assigned Tri-Cities Agent noted that as of April 21, 2025, the clarifying videos appeared to be taken down, and no videos remained of Morse discussing his frustrations with the government.

12. On or about May 3, 2025, the FBI NTOC received a phone call from an adult female ("AF1"), to report concern about Morse's behavior. AF1 mentioned Morse was suicidal and was posting online about ghost guns and how society was going to pay. AF1 advised Morse made several posts on Facebook about making ghost guns with his 3D-printer and teaching others how to do it. AF1 advised Morse was upset because he lost his grandson approximately two years prior and made a post shortly before the call stating he had nothing but hell left to live and he was ready to give people what they deserved. AF1 advised Morse's address was 1356 N Highway 41, Lot 46, Post Falls, Idaho.

13. On or about May 6, 2025, I was assigned AF1's complaint regarding Morse. I, and other FBI employees in the FBI Coeur d'Alene RA, began conducting investigative actions regarding Morse.

14. The FBI conducted open-source research regarding Morse and located numerous social media accounts believed to be associated with Morse. The FBI identified a Facebook account, web address www.facebook.com/robert.morse.3576, display name "Robert R Morse". The FBI identified a YouTube account, www.youtube.com/@RobertRMorse, display name "Robert R Morse". The FBI identified an Instagram account, username "robert.morse.3576", display name "Robert R Morse". The FBI captured numerous images, screenshots, and videos from the social media accounts. Due to the voluminous amount of content on the social media accounts, all of the content captured has not been added to this affidavit, nor has all of the content on the accounts been reviewed and captured by the FBI. It should be noted that during review of Morse's social media accounts, there were times that Morse had content in which it appeared he spoke about breaking firearms laws as well as times where it appeared he and others spoke about following firearms laws or the general discussion of firearms laws. Furthermore, there were times when Morse made comments or content that was threatening in nature but other times where Morse made comments or content regarding not being threatening. Below is some of the content captured and viewed by the FBI:

a. On or about April 7, 2025, a Facebook Reel on Morse's account with a photo of several firearms as seen below.




b. Below is an example of a conversation associated with one of Morse's Facebook posts in which he and others are discussing firearm legalities.




c. Below is a screenshot of a video posted on Morse's Facebook with a titled, "Can it fire as fast?" The video was posted on or about April 26, 2025, in which a hand was holding a handgun with a magazine inserted into the handgun. The individual then racked the slide numerous times ejecting unspent ammunition from the firearm. Several other firearms were visible in the video.



d. Below is a screenshot of a video posted on Morse's YouTube on or about May 5, 2025, in which Morse discussed a traffic stop that occurred recently while he was driving. Morse described being pulled over for not putting his turn signal on. Morse described a law enforcement officer waiting for backup to search his vehicle and Morse described having numerous firearms in his vehicle to include some he just built. Morse described having two Glocks with 32 round magazines right next to him in the vehicle and then putting a pillow over it so the officer did not freak out. Morse then explained he would never let anyone disarm him ever again and that he was concerned law enforcement would have to disarm him to search his

vehicle. Morse then stated something to effect of, "I'm tired of life, that cop almost lost his fucking life that night. I had him dead to rights. I felt backed into a corner, I didn't know what the fuck to do, but I was not letting them take my fucking guns again." Morse continues to speak about how part of him thought the officer was a good guy but part of him thought the officer was a bad guy.



e. On or about October 28, 2025, I received an email from Bonner County Sheriff's Office with a screenshot of the computer record of a traffic stop involving Robert Morse. The screenshot appeared to show the date of the traffic stop as May 1, 2025.

f. On or about May 6, 2025, a video was posted on Morse's YouTube account with the title, "Because." Later in the evening on May 6,

2025, it appeared Morse may have changed the title or reposted the video and titled it, “That’s Why.” Below is a screenshot of the video. The video begins with an overview of what appears to be a workbench and then pans up to an AR-15 style rifle on a wall. A voice, believed to be Morse, states something to the effect of, “Ok, so you may ask why would an ex-criminal need a gun?” The video then pans to a tablet device with what appears to be Ring doorbell camera footage on it. Morse then discussed an incident depicted on the footage. While discussing the incident, Morse points out an individual and states something to the effect of, “That’s me, armed.” The video ends with Morse describing how the footage depicts why an ex-criminal should be able to own guns.



g. On or about March 26, 2025, a video was posted on Morse's Instagram account of Morse firing a handgun. Below is a screenshot of that post.




15. On or about April 24, 2025, a video was posted on Morse's Facebook titled, "Whaaaat??! It's Not a Shower Head??" In the video, Morse appears to be holding a cylindrical object that appears to be a suppressor. Morse talks about someone online saying it was a suppressor and he thought it was a showerhead. The video then depicts the object being attached to a shower and a single stream of water coming out of it. Morse then states that he guesses it wasn't a showerhead, and the object is then melted.

16. On or about May 6, 2025, the FBI conducted an interview of AF1. AF1 advised they were concerned with Morse harming himself or others. AF1 advised Morse lived with Judy Poole. AF1 advised she was in Coeur d'Alene visiting her family approximately a week ago and saw Morse at 1356 N Highway 41, Lot 46, Post Falls, Idaho tucking a pistol into his pants. AF1 noted anywhere Morse was, he would have a firearm with him. AF1 advised Morse also had a shed type building on the property where he might have firearms but AF1 was not positive. AF1 was most concerned for the safety of Poole and did not want any harm to come to her. AF1 did not think Morse was a felon but mentioned he had gotten into trouble a long time ago in the past. AF1 advised Morse had issues with mental health.

17. On or about January 1, 2026, a video was posted on Morse's Facebook titled, "What filaments and why…" that appeared to be Morse talking about different filaments used to make guns. During the video Morse talks about doing "full auto" with certain firearms. Morse notes some filaments melt during full auto.

18. On or about January 7, 2026, a video was posted on Morse's Facebook titled, "Gambino." The video appears to be a small firearm that is similar to a firearm I have seen called the Gambino. I took a screenshot from www.print-a-22.com/gambino/ regarding a gun that I believe to be the Gambino, similar to

Morse's. This firearm can be 3-D printed and may be made with very little metal so that the firearm passes through metal detectors. As you can see in the screenshot below, the "READ ME" section states something to the effect of, "Only use proper 22lr Barrel Liners with Rifling, Otherwise its illegal and Dangerous."




Below is a screenshot from Morse's video:




19. On or about January 18, 2026, a video was posted on Morse's Facebook titled, "and that had the weight for the Gambino in the mag. #fake #3d #9mm #drone #dji". The video depicts a drone flying in what appears to be Morse's yard with a firearm mounted on the drone.

20. On or about January 18, 2026, a video was posted on Morse's Facebook titled, "Do they work for airsoft?". The video appears to be Morse 3D printing a suppressor, also known as a silencer. The video shows what appears to be the 3d-printer screen with the words "Standard Rifle Suppressor 3-4 Thread Adapter (form 1).g…" as depicted below.



It is unclear if the video depicts the same silencer discussed in paragraph 15 of this affidavit or a different one. On or about January 27, 2026, a video was posted on Morse's Facebook which appeared to be a shortened clip of the video discussed in paragraph 15.

21. On or about January 16, 2026, a video was posted on Morse's Facebook that appeared to be Morse holding a firearm and a box of ammunition. Morse describes the ammunition as 147 grain Grizzly ammunition. The ammunition box appears to be a box of Federal ammunition, a common ammunition manufacturer.

22. On or about January 21, 2026, a video is posted to Morse's Facebook titled, "My Facebook is where I'll be posting from now on for non-subscribers. Instagram doesn't pay otherwise. #3dprinting #3dprint #9mm #lowers #fake". In the video Morse describes he will not be posting videos on Instagram anymore until they start paying for views.

23. On or about February 2, 2026, the FBI observed a video on Morse's Facebook titled, "Well if I was going to Hell… This guy would make a worthy passenger. Js and for those who say turn the other cheek, that just continues the cycle for someone else." The video appeared to be a message string between Morse and an unknown account. Below is a screenshot from the video in which it appears Morse's account sends the following messages: (Morse's messages

believed to be in blue)




24. On February 9, 2026, a federal search warrant was issued by the Honorable Raymond E. Patricco, Chief Magistrate Judge for the District of Idaho, in case number 26-mj-28-REP relating to this investigation. The warrant authorized the search of MORSE's residence at 1356 N Highway 41, Trailer # 46, Post Falls, Idaho for evidence related to violations of Title 26 U.S.C. § 5861(d) and Title 18 U.S.C. § 922(g)(1), more particularly described in Attachment B to that warrant.

25. On February 12, 2026, the FBI executed a search warrant at 1356 N Highway 41 Trailer #46, Post Falls, Idaho, 83854, the residence of Morse. During the search warrant, numerous items of evidence were seized. Numerous rounds of

assorted calibers and various manufacturers of ammunition were seized to include but not limited to Winchester, Federal, and Sellier and Bellot. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Jared Tomaso, a firearms interstate nexus expert, was present at the search. SA Tomaso advised that the majority of manufacturers of the seized ammunition are located outside the state of Idaho, therefore, they had to have traveled in interstate and/or foreign commerce.

26. SA Tomaso examined a firearm present in Morse's room. The firearm appeared to be a privately made AR-15 type firearm. The firearm was chambered in .300 blackout caliber and had a loaded magazine inserted. During SA Tomaso's examination of the firearm, he determined the firearm had a pistol configuration with a barrel of less than 16 inches and a vertical foregrip installed. Due to these characteristics, SA Tomaso believed the firearm would be classified as a firearm, specifically, "any other weapon," under the National Firearms Act (NFA), and therefore subject to registration in the NFRTR. SA Tomaso was unable to locate a serial number on the firearm, therefore, SA Tomaso concluded that there is no way that the firearm could be registered in the NFRTR. Accordingly, possession of the unregistered firearm violates 26 U.S.C. 5861(d).

27. During the search, a firearm resembling what your affiant described in paragraph 18 as the Gambino was seized. The firearm will be sent to the ATF for further testing.

28. During the search, a yellow cylindrical item resembling a silencer was located in the residence. The suspected silencer appeared to be 3-D printed and had threads on one end. There was no serial number visible on the suspected silencer. The suspected silencer will be sent to the ATF for further testing.

29. During the search Morse was interviewed by SA Zahaczewsky. Morse attempted to provide several explanations during the interview. Below are a summary of some of the statements made by Morse:

a. Morse was confronted with the prior attempted unlawful possession of a firearm charge and was shown his written statement as described in paragraph 5. Morse acknowledged some memory of that statement.

b. Morse made multiple statements regarding his belief that he had his firearm rights restored but ultimately acknowledged he did not complete the paperwork. During the search, blank firearms restoration documents were photographed. Some of the documents were shown to Morse during his interview.

c. Morse described some characteristics about his AR-15 style short-barreled rifle (described further in paragraph 26) and said that the barrel was approximately 7.5 inches.

d. Morse advised he had a silencer that was intended for airsoft.

e. Morse advised he had ammunition.

f. Morse advised he is a user of CBD and THC and uses it daily.

30. Based on the foregoing, your Affiant respectfully requests the Court issue a criminal complaint charging Robert Morse with possession of unregistered firearm in violation of Title 26 U.S.C. § 5861(d).

Respectfully submitted this 13th day of February 2026.

Alexander Prostko
Special Agent
Federal Bureau of Investigation

Subscribed to electronically and sworn to before me via Zoom this 13th day of February 2026.

Hon. Raymond Edward Patricco
Chief United States Magistrate Judge